## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

**IN RE:**

Julie Ann Moll
Michael Edward Moll

      **Debtor(s)**

_____/

**CASE NO.** 22-01086-jwb
**Chapter 7**
**Hon. James W. Boyd**



Julie Ann Moll and
Michael Edward Moll

      **Plaintiff(s)**

v.

Miguel Cardona, Secretary of Education,
United States of America, Department of
Education, Student Loan Solutions, LLC,
Turnstile Capital Management, LLC,
Student Loan Xpress, Navient
Corporation, The First National Bank in
Sioux Falls, Sallie Mae Bank; Navient
Solutions, LLC, VL Funding, LLC,
Colorado Student Loan Trust, Bank of
America, N.A., Pennsylvania Higher
Education Assistance Agency dba
American Education Services, Deutsche
Bank U.S.A., Radius Global Solutions,
LLC, and GC Services, L.P.

      **Defendant(s)**

**Adv. Proc. No.  23-          -jwb**


NOW COME Plaintiffs – Debtors, Julie Moll and Michael Moll, by and through their attorneys,

Oppenhuizen Law Firm, PLC, and for their Complaint to determine dischargeability of their

student loan indebtedness pursuant to 11 U.S.C. § 523(a)(8) state as follows:

1

## I.    Jurisdiction and Venue

1. Julie Ann Moll ("Ms. Moll" or "Julie") and Michael Edward Moll ("Mr. Moll" or "Michael"), (Collectively, "Plaintiffs") filed their joint bankruptcy petition on May 25, 2022, seeking relief under Chapter 7 of the United States Bankruptcy Code, and their case was assigned case number 22-01086-jwb.  The case remains pending before this Court.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157

3. This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(l).

4. The statutory support for this adversary proceeding is 11 U.S.C. §523(a)(8).

## II.    Parties

5. Plaintiff, Julie Ann Moll ("Ms. Moll" or "Julie"), is an individual who resides in Ottawa County, Michigan, and is a Debtor in the underlying bankruptcy proceeding.

6. Plaintiff, Michael Edward Moll ("Mr. Moll" or "Michael"), is an individual who resides in Ottawa County, Michigan, and is a Debtor in the underlying bankruptcy proceeding.

7. Defendant, United States Department of Education, through Miguel Cardona, Secretary of Education ("Dept. of Ed."), is a creditor of Ms. Moll, which provided loans to Ms. Moll that Defendant asserts to be an educational or student loan as defined by 11 U.S.C. § 523(a)(8).  The Dept. of Ed. is the federal agency charged with administration of Federal Student Aid Programs, including Federal Student Loans.

8. Defendant, Student Loan Solutions, LLC ("SLS"), is a creditor of Ms. Moll, which provided loans to Ms. Moll that Defendant asserts to be an educational or student loan as defined by 11 U.S.C. § 523(a)(8).  Student Loan Solutions, LLC has filed suit against Ms. Moll and Mr. Moll in the Ottawa County Circuit Court (Case NO 21-06470-CZ).  Upon information and belief, SLS is an Arkansas limited liability company engaged in

2

purchasing defaulted student loan obligations, with its principal place of business located at 3219 S. 70th Street, Fort Smith, AR 72903.

9.  Defendant, Turnstile Capital Management, LLC ("TCM"), is a creditor of Ms. Moll, which provided loans to Ms. Moll that Defendant asserts to be an educational or student loan as defined by 11 U.S.C. § 523(a)(8).  Upon information and belief, TCM is a Delaware limited liability company engaged in purchasing defaulted student loan obligations, with its principal place of business located at 402 W. Broadway #2000, San Diego, CA 92101, which is authorized to conduct business in Michigan.

10. Defendant, Student Loan Xpress ("SLX"), is a creditor of Ms. Moll, which provided loans to Ms. Moll that Defendant asserts to be an educational or student loan as defined by 11 U.S.C. § 523(a)(8).  Upon information and belief, SLX is a Delaware limited liability company with its principal place of business located at 12760 High Bluff Dr., Suite 210, San Diego, CA 92130, which was authorized to conduct business in Michigan until September 8, 2017.

11. Defendant, Navient Corp. dba Private Credit Navient Servicing ("Navient PC"), is a creditor of Ms. Moll, which, upon information and belief, provided loans to Ms. Moll that Defendant asserts to be an educational or student loan as defined by 11 U.S.C. § 523(a)(8). Upon information and belief, Navient PC's principal place of business at 123 Justison St. Wilmington, DE 19801, authorized to conduct business and conducting business in Michigan.

12. The First National Bank in Sioux Falls ("FNBSF"), is a creditor of Ms. Moll, which provided loans to Ms. Moll that Defendant asserts to be an educational or student loan as

3

defined by 11 U.S.C. § 523(a)(8).  Upon information and belief, FNBSF's principal place of business at 100 S. Phillip Avenue, Sioux Falls, SD 57104.

13. Defendant, Navient Solutions, LLC ("Navient S"), is a creditor of Ms. Moll, which provided loans to Ms. Moll that Defendant asserts to be an educational or student loan as defined by 11 U.S.C. § 523(a)(8).  Navient Solutions, LLC is a Delaware limited liability company, with its principal place of business at 123 Justison St. Wilmington, DE 19801, authorized to conduct business and conducting business in Michigan.

14. Defendant, Sallie Mae Bank is a creditor of Ms. Moll, that Defendant asserts to be an educational or student loan as defined by 11 U.S.C. § 523(a)(8).  The Sallie Mae Bank has its principal place of business at 175 Temple, Salt Lake City, UT 84101.

15. Defendant, VL Funding, LLC is a creditor of Ms. Moll, that Defendant asserts to be an educational or student loan as defined by 11 U.S.C. § 523(a)(8).  The VL Funding, LLC has its principal place of business at 2001 Edmund Halley Dr., Reston, VA 20191.

16. Defendant, Colorado Student Loan Trust, is a creditor of Ms. Moll, which guaranteed certain loans made by Student Loan Xpress, Inc.to Ms. Moll that Defendant asserts to be an educational or student loan as defined by 11 U.S.C. § 523(a)(8).  The Colorado Student Loan Trust has its principal place of business at 4500 Cherry Creek Dr. S., Suite 300, Glendale, CO 80246.

17. Defendant, Bank of America NA ("BofA"), is a creditor of Ms. Moll, which provided loans to Ms. Moll that Defendant asserts to be an educational or student loan as defined by 11 U.S.C. § 523(a)(8). Bank of America is a National Association, with its principal place of business at 100 N. Tryon St., Charlotte, NC 28255.

4

18. Defendant, Pennsylvania Higher Education Assistance Agency dba American Education Services guaranteed certain loans taken by Ms. Moll and is therefore a creditor of Ms. Moll, which provided loans to Ms. Moll that Defendant asserts to be an educational or student loan as defined by 11 U.S.C. § 523(a)(8) is a Pennsylvania corporation with its principal place of business located at 1200 N. 7th Street, Harrisburg, PA 17102.

19. Defendant, Deutsche Bank ("DB"), is a creditor of Ms. Moll, which provided loans to Ms. Moll that Defendant asserts to be an educational or student loan as defined by 11 U.S.C. § 523(a)(8) is a foreign bank authorized to conduct business in the United States with its principal place of business located at One Columbus Circle, New York, NY 10019

20. Defendant, Radius Global Solutions, LLC ("RGS"), is a creditor of Ms. Moll, which provided loans to Ms. Moll that Defendant asserts to be an educational or student loan as defined by 11 U.S.C. § 523(a)(8).  RGS is a Minnesota limited liability company authorized to transact business in Michigan, with its principal place of business located at 7831 Glenroy Rd., Suite 250, Edina, MN 55439.

21. Defendant, GC Services, Limited Partnership ("GCS"), is a creditor of Ms. Moll, which provided loans to Ms. Moll that Defendant asserts to be an educational or student loan as defined by 11 U.S.C. § 523(a)(8).  GCS is a Texas limited partnership authorized to transact business in Michigan, with its principal place of business located at 6330 Gulfton, Houston, TX 77081.

22. Plaintiff, Mr. Moll is alleged to have guaranteed Ms. Moll's obligations for the following loans:

    a.   FMA loans with the following loan numbers ending:

        i.   7328-0104

      ii.  7328-0105

     iii.  7328-0106

     iv.  7328-0115

      v.  7328-0118

b. Navient Solutions, LLC loans with the following loan numbers ending:

      i.  4438

      ii.  4412

     iii.  4420

     iv.  9313

      v.  9321

c. The Bank of America Student Lending loan.

d. The loan currently owned by Allied Interstate.

23. Ms. Moll has the following loans outstanding with the following Defendants, each of which is asserted to be a student loan for purposes of 11 U.S.C.! 523(a)(8).

24. The Dept. of Ed. loaned Ms. Moll funds to cover tuition, fees and other necessary educational expenses and certain costs of attendance of her medical education.

25. The Dept. of Ed. Refinanced multiple loans it made to Ms. Moll in the form of a consolidation loan, loan number ending 7328, with a total amount outstanding of approximately $463,907.88.

26. SLS loaned an unknown amount of money to Ms. Moll for purposes of covering her costs of attendance for a portion of Ms. Moll's medical education with an account ending in 7324 with approximately $65,768.98 due and owing.

27. TCM loaned Ms. Moll funds to cover tuition, fees and other necessary educational expenses and certain costs of attendance as follows:

   a.   Loan number ending 4794 with a balance of $60,498.09.

   b.   Loan number ending 4795 with a balance of $80,088.25

28. SLX loaned Ms. Moll funds to cover tuition, fees and other necessary educational expenses and certain costs of attendance as follows:

   a.   Loan number ending 4794, with a current amount due of $60,498.09

   b.   Loan number ending 4795, with a current amount due of $80,088.25

29. FMA loaned Ms. Moll funds to cover tuition, fees and other necessary educational expenses and certain costs of attendance as follows:

   a.   Loan number ending, 7328-0104 with a current amount due of $52,881.67

   b.   Loan number ending, 7328-0105 with a current amount due of $24,438.93

   c.   Loan number ending 7328-0106, with a current amount due of $119,457.47

   d.   Loan number ending 7328-0115, with a current amount due of $66,152.38

   e.   Loan number ending 7328-0118 with a current amount due of $14,188.26

30. Navient S loaned Ms. Moll funds to cover tuition, fees and other necessary educational expenses and certain costs of attendance as follows:

   a.   Loan number ending, 4438 with a current amount due of $13,666.95.

   b.   Loan number ending, 4412 with a current amount due of $117,283.29.

   c.   Loan number ending 4420, with a current amount due of $64,925.75.

   d.   Loan number ending 9313, with a current amount due of $52,303.79.

   e.   Loan number ending 9321 with a current amount due of $24,175.32.

   f.   Unknown loan number with a current amount due of $272,354.10.

31. BofA loaned Ms. Moll funds to cover tuition, fees and other necessary educational expenses and certain costs of attendance with one loan with an account number ending in 0001 with a current balance of approximately $66,649.97.

32. DB loaned Ms. Moll funds to cover tuition, fees and other necessary educational expenses and certain costs of attendance with one loan with an account number ending 4389, and a current amount due of approximately $141,086.34.

33. RGS loaned Ms. Moll funds to cover tuition, fees and other necessary educational expenses and certain costs of attendance with an account number ending 4389, and a current amount due of approximately $90,590.71.

34. GCS loaned Ms. Moll funds to cover tuition, fees and other necessary educational expenses and certain costs of attendance with an account number ending 4389, and a current amount due of approximately $80,340.12.

35. AI loaned Ms. Moll funds to cover tuition, fees and other necessary educational expenses and certain costs of attendance with an account number ending 5634, and a current amount due of approximately $277,118.71

36. Many of these loans are serviced by other entities, to which courtesy copies of the Summons and Complaint will be mailed.

37. Many of these loans have changed hands.

38. Many of these lenders have not contacted either of the Plaintiffs in a substantial period of time.

### III.   Factual Background

### Education – Undergraduate Degree

39. Plaintiff, Ms. Moll, enrolled in Aquinas College in Grand Rapids, MI for the fall semester in 1999 to study biology.

40. Ms. Moll took some classes at Grand Valley State University while working toward her B.S. in Biology from Aquinas College.

41. In 2004, Ms. Moll received her B.S. degree from Aquinas College in biology.

42. Ms. Moll believes that she has no remaining student loans as a result of her undergraduate education.

**Education – Unobtained Medical Degree**

43. Ms. Moll enrolled in medical school at American University of the Caribbean, which is located on the island of St. Maarten ("AUC") in the fall semester 2004.

44. Ms. Moll's educational goal and purpose was to obtain her M.D. degree and practice medicine.

45. Ms. Moll borrowed money each semester she was enrolled at AUC.

46. AUC was a Title IV accredited school, and therefore, federal student loans were offered to students of AUC.

47. Ms. Moll borrowed from the U.S. Department of Education and later consolidated those loans into one Department of Education consolidation loan, which is described above.

48. Ms. Moll also borrowed from Navient Private Credit Services during her time at AUC.

49. The student loan proceeds covered Ms. Moll's tuition and fees, Ms. Moll's books, Ms. Moll's living expenses, including, but not limited to rent, utilities, food, and other necessary living expenses.

50. The student loan proceeds also covered Ms. Moll's transportation to and from St. Maarten and Grand Cayman, and other expenses that are not qualified educational expenses.

51. Ms. Moll was required to travel to St. Maarten and live there during her time in school at AUC.  Ms. Moll traveled home to Grand Haven, Michigan to spend time with her family between semesters, but was otherwise a full-time medical student.

52. AUC made multiple claims about the education it provided and its status that proved to be false.  By way of example and not limitation, AUC asserted that it provided flexibility in its learning environment that was not provided by other medical schools.  This proved to be untrue.

53. Ms. Moll's daughter had a substantial emergency while Ms. Moll was in school.

54. Ms. Moll contacted her faculty advisor about flying home for two or three days to tend to her daughter, and her faculty advisor indicated that it should be fine for her to return home under the circumstances, but Ms. Moll would need to have the Dean authorize her to miss the classes.

55. The Dean informed Ms. Moll that she needed to "get her priorities straight." And informed her that "this is why [AUC does] not like to admit older students who are married with children; Mothers in particular focus on their families' needs rather than their education."

56. The Dean then informed Ms. Moll that she would fail all her classes that semester if she left for two or three days to tend to her daughter's needs.

57. Ms. Moll did return to Michigan for her daughter, and the Dean entered failing grades for each class in which Ms. Moll was enrolled during that semester.

58. Another example was AUC indicating that Ms. Moll's anatomy professor was a Harvard trained physician.

59. Upon reviewing the available information, it was clear that the professor was trained at medical schools in Europe that were not on par with Harvard Medical School.

60. AUC also provided professors who could not communicate effectively in English, despite promising an education entirely in English.

61. In the summer of 2005, Ms. Moll transferred from AUC to St. Matthews University, School of Medicine ("St. Matthews") in Grand Cayman and spent one year there in medical school.

62. St. Matthews was not a Title IV school.  St. Matthews claimed to be a Title IV school when Ms. Moll applied to attend, then asserted that it was seeking to be accredited as a Title IV school after Ms. Moll enrolled and began attempting to obtain Federal Student Aid.  St. Matthews was never granted Title IV status / accreditation while Ms. Moll was a student. Therefore, Ms. Moll was restricted to private student loans to cover the cost of attendance, including tuition, housing, living expenses.  As a result, most of Ms. Moll's student loans have a much higher interest rate, more arduous payment terms and the lenders pursue collection in a much different and unregulated manner.

63. During May 2006, St. Matthews indicated that it was moving to Miami, and the school continued to make assertions that it was or would soon be a Title IV accredited school.

64. The students had to find a way to relocate to Miami during the period in which they were taking final exams for spring semester 2006.

65. Ms. Moll continued her medical school studies in Miami during summer and fall semester 2006.

66. During spring 2007, Ms. Moll began her clinical studies in Chicago, Illinois.

67. One selling point of St. Matthews was that, regardless of its campus, students were purportedly able to obtain clinical study programs to meet their requirements near their homes throughout the United States.

68. As an adult student, with a family, this presented a significant appeal to Ms. Moll. However, she was not able to find clinical programming nearer to her home than a three-and one-half hour drive or an even longer and unreliable train ride.

69. Ms. Moll was also unable to obtain the clinicals that were required by her program of study on the timeline that was required.

70. While the school claimed that the clinical program could be completed in the Chicago location on the required timeline, the clinicals were spread out substantially, making it impossible for Ms. Moll to complete her clinical studies within the maximum time period permitted.

71. St. Matthews did not inform its students that priority would be given to students from U.S. based schools and higher-ranking schools over St. Matthews students.

72. This left Ms. Moll unable to fill her schedule and with her clinical rotations taking more years than the entire anticipated duration of medical school.

**St. Matthews' Direct Actions to Ensure Ms. Moll Could Not Complete Her Degree Program**

73. Ms. Moll had raised issues about the clinical dean's false statements that St. Matthews was a Title IV school.

74. The clinical dean played a direct role in denying Ms. Moll access to the necessary clinical studies that would permit her to complete the course of study.

75. Ms. Moll became aware of the clinical dean's activities in inflating the grades of students whose parents paid extra at St. Matthews.

76. Ms. Moll had documents reflecting original grades that could be compared to the recorded grades.

77. The dean's actions of inflating the grades of students had caused direct harm to Ms. Moll and were harming the school's reputation as well as its students' ability to locate employment, residencies and fellowships. upon completion of their education.

78. Ms. Moll was contacted by fellow students requesting that she sends an attorney who requested documentation that would provide evidence of the grade inflation scheme.

79. After this, the clinicals dean began making it even more difficult to complete her clinicals and take all of the required testing.

80. The clinicals dean also modified the timelines with regard to Ms. Moll, in relation to turning in time logs and related information and set unreasonable time requirements for taking specified tests arising out of her clinical studies.

81. After unreasonably delaying Ms. Moll's ability to take her Step One clinicals test to the point at which it was nearly too late for Ms. Moll to take the test and not be dropped from the program, the clinicals dean demanded that Ms. Moll take a practice Step Two test almost immediately, or the clinicals dean would withdraw Ms. Moll from the clinical education and from the entire school.

82. The requirement that Ms. Moll take the practice test created significant conflicts with other requirements, such that it was impossible to take the test without sacrificing other obligations of her clinical education.

83. Ultimately, the clinicals dean withdrew Ms. Moll from the school and her clinicals, as she was unable to complete the studies and take the test on the clinicals dean's modified and arbitrary timeline.

84. Ms. Moll did not finish her medical school curriculum as a result of the clinicals dean's inappropriate actions and is one class short of her M.D. degree.

### Education – Worthless and Unusable Master's Degree

85. Between 2008 and 2014, Ms. Moll was dual enrolled in both St. Matthews medical school and, for a period, Davenport University, and for another period University of Phoenix.

86. During the period of dual enrollment with Davenport University, Both Davenport University and St. Matthews were both for profit universities. St. Matthews was not a Title IV school. Davenport was a Title IV school.

87. Davenport University was owned by the same company that owned AUC.

88. Davenport University was not owned by the owners of St. Matthews, but St. Matthews had arranged for dual enrollment programs in order to facilitate St. Matthews students obtaining federal student loans through enrollment at Davenport University.

89. The dual enrollment option allowed Ms. Moll to obtain federal student loans, whereas, without dual enrollment, she could not obtain federal student loans.

90. Davenport University became a non-profit educational institution because it disaffiliated with its owners.

91. Dual enrollment for U.S. students was also offered through University of Phoenix, which was another for profit educational institution.

92. University of Phoenix was a Title IV school, and thus federal student loans were available to students attending University of Phoenix.

93. Ms. Moll took advantage of Dual enrollment with University of Phoenix in order to obtain federal student loans for her education.

94. She transferred from Davenport University to University of Phoenix because University of Phoenix offered a Master of Business Administration with a direct focus on Healthcare Administration, which meshed well with Ms. Moll's work toward her M.D.

95. Ms. Moll believed that a degree from University of Phoenix would expand her marketability after receiving her M.D.

96. University of Phoenix intentionally led Ms. Moll to believe that a degree from University of Phoenix would expand her marketability after receiving her M.D.

97. Contrary to University of Phoenix's representations to Ms. Moll stated in the immediately preceding paragraph, the University of Phoenix degree does not make Ms. Moll marketable, with or without her M.D., and does not provide opportunities to work in Healthcare Administration.

98. Ms. Moll continued pursuing her M.D. from St. Matthews and continued pursuing her Master of Healthcare Administration from University of Phoenix.

99. Ms. Moll received her MBA, which was a master's in healthcare administration from University of Phoenix.

100.    University of Phoenix is a now defunct, closed, for profit school, which has been determined to have engaged in fraudulent behavior in order to secure students and cause students to take on student loans based upon University of Phoenix's fraud.

101.    While Ms. Moll attended, Davenport University was a for profit university owned by DeVry, which engaged in the same fraudulent behavior to scam students into taking on student loans based upon its fraud.

102.    Ms. Moll has never been able to use her master's degree, which was granted by the fraudulent and now defunct University of Phoenix.

103.    A degree granted by University of Phoenix has little to no value, as it is not accepted as a degree that provides equivalent educational benefit and experience as a traditional educational institution.

15

104.     Ms. Moll's inability to use the degree is partially the degree's lack of value, as it was granted by a fraudulent institution without any value to a job seeker. Ms. Moll's inability to use the degree is also the result of Ms. Moll's substantial medical problems, which make it impossible for her to work.

**Ms. Moll's Medical Conditions Made Completion of her Medical Degree Impossible and Make it Impossible for Ms. Moll to Work Now or in the Future.**

105.     Ms. Moll suffers from a number of medical problems, many of which contributed to her inability to complete her medical degree, and the combined sum of which makes it impossible for Ms. Moll to work now or at any time in the future.

106.     Ms. Moll has been plagued by many medical conditions and difficulties over the course of her adult life.

107.     Ms. Moll's medical conditions and difficulties worsened during the time she was in college, medical school, and when she was dual enrolled in medical school and her masters program.

108.     Ms. Moll's medical conditions and difficulties have continued to worsen since obtaining her masters degree and since she was withdrawn by the clinicals dean of St. Matthews.

109.     Ms. Moll's medical conditions and difficulties are a complex interrelated set of symptoms, diseases and abnormalities, which, when taken as a whole, have left Ms. Moll entirely incapable of working.

110.     By way of example and not limitation, Ms. Moll has been diagnosed with and is treating for the following:

    a.   Ehlers Danlos Syndrome.

b. Severe Arthritis of the CMC Joint in both hands

c. Cervical radiculopathy and muscle spasms throughout her body

d. Trigeminal and Occipital Neuralgia

e. Chronic Migraines

f. Chronic nausea and vomiting

g. Cytochrome Polymorphisms

111.    Ms. Moll has engaged in multiple failed surgeries, often leaving her in worse condition than prior to the procedure.

112.    Ms. Moll takes multiple medications as part of a regular treatment regimen, which make it impossible for her to work efficiently and safely, including narcotic pain relievers and muscle relaxants.

113.    Ms. Moll's long-term daily use of narcotic pain medications and muscle relaxants cause cognitive impairments that preclude professional employment in the field of Medical Administration, which is the only field in which Ms. Moll holds a degree that could lead directly to employment.

114.    Ms. Moll's long-term daily use of narcotic pain medications and muscle relaxants cause her to be lethargic and keep her in bed all but approximately four hours per day. These issues preclude professional employment in the field of Medical Administration, which is the only field in which Ms. Moll holds a degree that could lead directly to employment.

115.    Ms. Moll has a condition that causes her body to metabolize medication more quickly than ordinary human beings. This condition results in the requirement that she take

much higher doses of medications, including narcotic pain medication and muscle relaxants, than most human beings.

116.     As a result of the requirement for higher doses of medications, while on these medications, Ms. Moll cannot work in health care administration, in which she holds her masters degree, even if her physical impairments did not, standing alone, prevent her from working.

117.     Ms. Moll's lack of ability to work has existed throughout the repayment period.

118.     Ms. Moll's lack of ability to work will continue to exist through the remainder of her life.

119.     Ms. Moll's lack of ability to work means that she is not earning enough money to assist Mr. Moll in providing the minimum amount of money that is needed each month in order to pay for the bare necessities of life.

120.     Ms. Moll has not attempted to avoid payment of her student loans, except by utilizing programs available to her.

121.     Ms. Moll has failed to make payments as required by a number of her student lenders as a result of having no income or money beyond what is essential to cover her family's needs.

122.     Ms. Moll has not done anything to avoid paying her student loans.

123.     Ms. Moll has not made decisions related to her income or expenses, the ownership of property, or her ability or inability to work, based upon her student loan debt or to avoid paying student loans.

124.     Ms. Moll does not have her M.D. degree, as she was unable to complete the program.

125.     The majority of Ms. Moll's student loan debt is the result of her pursuit of the M.D. degree.

126.     Ms. Moll's expectation in pursuing the degree was that she would be a medical doctor and earn sufficient money to repay her student loans.

127.     Ms. Moll's total student debt, inclusive of accrued interest, penalties, fees and costs, now exceeds $1.5 million.

128.     Ms. Moll has not worked in many years as a result of her medical conditions.

129.     Ms. Moll cannot be employed as a medical doctor.

130.     Requiring Ms. Moll to repay her student loans will create an undue burden upon Ms. Moll and her family.

### Mr. Moll's Obligations as Guarantor of Specific Student Loans

131.     Upon information and belief, Mr. Moll co-signed on a number of Ms. Moll's student loans; specifically, the following loans:

    a.  The following loans made by First National Bank of Sioux Falls, denoted by account numbers ending as follows:

        i.  7328-0106

        ii.  7328-0115

        iii.  328-0118

        iv.  7328-0104

        v.  7328-0105

b. The following loans made by Navient / Private Credit Navient Servicing, denoted by account numbers ending as follows:

    i. 5634

c. The following loans made by Navient Solutions, LLC, denoted by account numbers ending as follows:

    i. 4438

    ii. 4412

    iii. 4420

    iv. 9313

    v. 9321

d. One loan made by Bank of America with account number ending 0001

132. The total student debt Mr. Moll guaranteed, inclusive of accrued interest, penalties, fees and costs, now exceeds $550,000.00.

133. Mr. Moll's obligation to repay is solely the result of his personal guaranty of Ms. Moll's student loans.

134. Mr. Moll is an automobile mechanic and earns a modest income.

135. Mr. Moll has no other training, skills or education which would enable him to change careers or earn substantially more money than he currently earns.

136. Mr. Moll is the sole source of income and only financial provider for Mr. and Ms. Moll's household.  He has been since Ms. Moll began her medical school education.

137. Mr. Moll's income is insufficient to cover the bare necessities for Mr. and Ms. Moll's household.

138.     Mr. Moll's income is insufficient to make any payments on the student loans he personally guaranteed.

139.     Mr. Moll's income is not expected to increase, nor could it reasonably be expected to increase.

140.     Mr. Moll has a number of debilitating medical and physical conditions, which make it very difficult for him to continue working.  These include, but are not limited to the following:

    a.  Rheumatoid Arthritis

    b.  Mr. Moll requires a knee replacement

    c.  Mr. Moll requires significant surgery on each foot and ankle to resolve arthritis issues and is having one of these surgeries during summer 2023, with the other to follow.

    d.  Mr. Moll is currently losing use of both hands and wrists due to arthritis issues.

141.     Mr. Moll has considered applying for social security disability benefits after his primary care physician, Rheumatologist and Podiatrist recommended that he stop working because of the damage to his joints and bone structures.

142.     However, Mr. Moll continues to work solely because the benefits would be insufficient to pay for the essential living expenses for his family, and Ms. Moll is incapable of working.

143.     Mr. Moll's physical health is likely to deteriorate, making it highly likely that his inability to repay the student loan obligations will improve.

144.     Mr. Moll has no ability to repay the student loans.

145.    Mr. Moll has failed to make payments as the guarantor, as required by a number of Ms. Moll's student lenders as a result of having no income or money beyond what is essential to cover her family's needs.

146.    Mr. Moll has not done anything to avoid payment on his guarantees of Ms. Moll's student loans.

147.    Mr. Moll has not made decisions related to his income or expenses, the ownership of property, or her ability or inability to work, based upon his guarantees of Ms. Moll's student loan debt or to avoid paying student loans.

148.    Mr. Moll has made every effort to earn as much money as he possibly can for purposes of providing for the needs and care for Plaintiffs' family.

**COUNT I**
**Determination of Dischargeability Pursuant to 11 U.S.C. 523(a)(8) –**
**Defendants Student Loan Solutions, LLC; Turnstile Capital Management, LLC; Student Loan Express (aka Student Loan Xpress); Navient Private Credit; FMA Alliance, Ltd.; Navient Solutions; FNB Sioux Falls; Colorado Student Loan Trust; FCDB NPSL 2010-1; Bank of America; Deutsche Bank; Radius Global Solutions, LLC; and GC Services, LP Loans Are, in part, Not Loans of the Type Described in**
**11 U.S.C. § 523(a)(8)**

149.    Plaintiffs incorporate all allegations contained in the preceding paragraphs as if fully set forth herein.

150.     11 U.S.C. § 523(a)(8) broadly excludes specific student loan debt from discharge.

151.    11 U.S.C. § 523(a)(8) states that to be non-dischargeable, the debt must be for one of the following:

a. An educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

b. An obligation to repay funds received as an educational benefit, scholarship, or stipend; or

c. Any other educational loan that is qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual

152.    All or a portion of the loans made by all Defendants, except Defendant Miguel Cardona, Secretary of Education to Ms. Moll, and guaranteed by Mr. Moll do not meet the requirements set forth in section 523(a)(8).

153.    During Ms. Moll's time at St. Matthews, her costs of living far exceeded the "cost of attendance."

154.    Examples of Ms. Moll's expenses that were paid by the use of Defendants' loans are, exorbitant rent as a result of significantly increased rents on Grand Cayman after the island was destroyed by a category 5 hurricane, travel expenses to and from Grand Cayman, and falsely inflated tuition and fees.

155.    St. Matthews increased the tuition significantly in order to substantially increase the amounts Ms. Moll, and other students, could borrow.

156.    St. Matthews then refunded significant portions of the inflated tuition to Ms. Moll, and other students, in order to enable the students to pay significantly inflated housing costs, which significantly exceeded U.S. Department of Education cost of living standards.

157.    Ms. Moll was dual enrolled at Davenport University and/or University of Phoenix, and St. Matthews while certain of these inflated tuition and fees were charged by St. Matthews on St. Matthews' own accord, in order to obtain loans beyond the proper cost of attendance.

158.     The amounts refunded to Ms. Moll through St. Matthews false inflation of tuition and fees, did not comport with requirements concerning student loans.

159.     The false increase of tuition and fees was done solely by St. Matthews and without Ms. Moll's involvement or request.

160.     Because those funds were neither required to pay St. Matthews for education, nor within the required costs associated with the cost of attendance, those amounts do not qualify as the type of loan set forth in 11 U.S.C. § 523(a)(8).

WHEREFORE, Plaintiffs request this Honorable Court enter a judgment determining that the portion of loans made by Defendants for the falsely inflated tuition and fees set by St. Matthews, are discharged by Plaintiffs' Discharge Order, which was entered by this Court on September 15, 2022 (Case No. 22-01086-jwb, Dkt. No. 20) and granting all such additional relief as is just and equitable.

**COUNT II**
**Determination of Dischargeability Pursuant to 11 U.S.C. 523(a)(8) – ALL DEFENDANTS Excepting Plaintiff, Julie Moll's Student Loans and Plaintiff Michael Moll's Personal Guarantee of Same from Discharge Would Impose an Undue Hardship Upon Debtors, and Discharging All Such Loans.**

161.     Plaintiffs incorporate all allegations contained in the preceding paragraphs as if fully set forth herein.

162.     Pursuant to 11 U.S.C. § 523(a)(8), student loans are generally non-dischargeable, "unless excepting such debt from discharge … would impose an undue hardship on the debtor and the debtor's dependents …"

163.     In order to establish that excepting student loans from discharge would cause an undue hardship, debtors have the burden of proof to establish the following:

a. The debtor cannot maintain a "minimal" standard of living for him or herself and any dependents if he or she was forced to repay his or her student loans based upon current income and expenses;

b. Additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

c. The debtor(s) has made a good faith effort to repay the loans.[1]

164.    Excepting Plaintiffs' student loans from discharge would impose an undue hardship on Plaintiffs and Plaintiffs' dependents.

### Prong 1: Debtors' Income and Expenses

165.    The first prong of the above requires a review of Debtors' current financial condition, by examining Debtors' financial circumstances at the time of the trial. *See United Student Aid Funds v. Pena*, 115 F.3d 1108 (9th Cir. 1998).

166.    This analysis requires a consideration of Debtors' ability to maintain a decent standard of living after making required payments on the subject loans. *See In re Fecek*, 2014 WL 1329414 (Bankr. S.D. Ind. March 31, 2014).

167.    The amount Ms. Moll is required to pay on her student loans is unknown.

168.    The amount Mr. Moll would be required to pay on the loans that he guaranteed is unknown.

169.    The Plaintiffs are Debtors in the above captioned chapter 7 bankruptcy proceeding, and they keep one budget for their family.

170.    Mr. Moll is responsible for all of the household income.

171.    Ms. Moll has not worked since before she was in school and cannot work.

---

[1] *Oyler v. Educ. Credit Mgmt Corp.*, 397 F.3d 382 (6th Cir. 2005) (quoting *Brunner v. N.Y. State Higher Educ. Svcs. Corp.*, 831 F.2d 395 (2d Cir. 1987)).

172.     All ordinary expenses that Mr. and Ms. Moll incur are joint or household expenses.

173.     Mr. and Ms. Moll's income and expenses are accurately reflected in their Schedules I and J, which were filed with the Court.

174.     Debtors' chapter 7 bankruptcy will result in a distribution to creditors as a result of an inheritance that Ms. Moll is due to receive in an unknown amount.

175.     Ms. Moll's total student loan debt exceeds $1.5 million.  Assuming an average interest rate of 6.5% annually, the annual interest on the loans would be $97,500.00.  In order to keep up with interest payments, Mr. and Ms. Moll would have to pay a minimum of $8,125.00 per month.

176.     Ms. Moll would not pay down any principal on any of the loans if she were to pay $8,125.00 per month.

177.     Ms. Moll's monthly income is $0.00.

178.     Mr. Moll's average gross monthly income is $4,131.68 and his average net monthly income is $3,420.14.

179.     As such, Mr. and Ms. Moll's available income for their household needs totals $3,420.14.

180.     Not including any payments to any Defendant in this case, Mr. and Ms. Moll's monthly expenses total $3,432.97 and are as follows:

 a.  Mortgage - $489.14 with 134 months left to pay on the mortgage.

 b.  Utilities - $950.00

 c.  Food and Housekeeping - $600.00

 d.  Clothing, Personal Care Products and Services - $200.00

 e.  Vehicle insurance - $ 393.83

     f.   Transportation expenses - $500.00

     g.   Medical expenses - $300.00 (which does not include all necessary medical expenses, as Debtors have skipped a number of necessary medical treatments in order to save money).

181.     Mr. and Ms. Moll have a number of expenses that they are currently unable to pay. Debtors' vehicles are all old and need either significant repairs or may need to be replaced.

182.     Mr. and Ms. Moll are unable to budget for any entertainment expenses.

183.     Mr. and Ms. Moll have no funds budgeted for home maintenance, repairs and upkeep, despite the fact that these are certainly necessary and unavoidable expenses.\

184.     Mr. and Ms. Moll's expenses are spartan at best, by way of example, their housing expense being under $500.00 per month, and no budget for maintenance of their home.

185.     Despite the fact that Mr. and Ms. Moll have a budget that includes only necessary expenses, they do not have a single dollar left over to make any payments on student loans.

186.     Mr. and Ms. Moll do not have sufficient income to cover the expenses of a "decent" life without making payments on their obligations to Defendants.

187.     In order to maintain a decent life and make the necessary payments on the loans that cover the interest, Mr. and Ms. Moll would have to earn a minimum amount sufficient to increase their monthly net household income by $8,200.00 additional every month.

***Prong 2: Debtors Have Additional Circumstances that Clearly Indicate their Current Hardship is Likely to Continue***

188.     The second prong requires the Court to evaluate any additional circumstances that may indicate that the hardship is likely to continue.

189.     In order to show facts that suffice as additional circumstances that indicate the debtors' hardship is likely to continue, Mr. and Ms. Moll must show that their circumstances are beyond a present inability to pay and reflect a "certainty of hopelessness" and be extraordinary, exceptional circumstances.

190.     Examples of facts evincing a "certainty of hopelessness" that have been given by the Sixth Circuit include, but are not limited to illness or disability, a lack of useful job skills.

191.     Facts relied upon must be beyond the debtors' control. *In re Oyler*, 397 F.3d 382 (6th Cir. 2005).

192.     Ms. Moll has multiple circumstances that are beyond her control that create a certainty of hopelessness and are beyond Ms. Moll's control.  These include, but are not limited to the following:

   a.  Ms. Moll's health is out of Ms. Moll's control, and the multiple conditions make it impossible for Ms. Moll to work.

   b.  Ms. Moll's health problems also require Ms. Moll to take medications that render Ms. Moll incapable of working.  She has no control over the medication that she is taking in light of her significant health problems.

193.     Ms. Moll was not able to complete her medical doctor degree, and her inability to complete the degree program was not under her control.  Ms. Moll's medical conditions played a role in not being able to complete the medical education, but the behavior of the clinical dean was a strong contributing factor also.  Ms. Moll had no control over either factor in not being able to complete her education.

194.     Mr. Moll's inability to pay is also beyond his control, and his circumstances evince a certainty of hopelessness.

    a.   Mr. Moll is an auto mechanic, who barely makes enough money each month to pay for the absolutely necessary expenses for his household.

    b.   Mr. Moll's medical conditions are bad enough that he is unlikely to be able to continue working for much longer.

    c.   Mr. Moll does not have the ability to increase his income in a meaningful way, and it is likely to go down if or when he has to apply for Social Security Disability.

195.     Mr. Moll has no control over the circumstances that make it hopeless that he will ever meaningfully pay down his portion of the obligations to Defendants.

### Prong 3: Debtors Have Acted in Good Faith Regarding Repayment of Loans

196.     The third prong requires that the debtor show a good faith attempt to repay the loans.

197.     It is not essential that the debtor has actually made any payments.  Instead, Debtors who clearly lacked sufficient income to make minimal payments may still qualify for a discharge.  *See In re Grove*, 323 B.R. 216, 225 (Bankr. N.D. Ohio 2005).

198.     Mr. and Ms. Moll's financial circumstances have been the same since Ms. Moll was withdrawn from her medical school.

199.     Neither Mr. nor Ms. Moll have been able to make any meaningful payments on any of the student loans because the couple has never had any income above that which is necessary to pay essential living expenses.

200.     However, Mr. and Ms. Moll made payments to Navient S on certain of Ms. Moll's student loans over a period of one to two years beginning in 2016.  Their payments were

in an agreed amount of $250.00 per month.  The agreement was based upon Mr. and Ms. Moll's ability to pay.

201.     Additionally, Mr. and Ms. Moll paid $50.00 per month to SLS for approximately the same period.  The payments to SLS were made based upon an agreement with SLS and were agreed to based upon Mr. and Ms. Moll's ability to pay.

202.     Mr. and Ms. Moll stopped paying the agreed amounts because they were not able to pay for food and essential medical treatments while still making the agreed upon payments, as their costs of living had increased, and they ran out of room to pay for necessities using their available credit.

203.     Mr. and Ms. Moll have lived modestly since Ms. Moll started school.

204.     Neither Mr. nor Ms. Moll have taken any steps to actively avoid paying their respective obligations to Defendants.

205.     Neither Mr. nor Ms. Moll have taken any steps to protect property or assets from any collection attempts of any of the Defendants.

206.     Ms. Moll is due an inheritance.

207.     The inheritance is property of the bankruptcy estate.

208.     Ms. Moll has no exemption room to protect any of the inheritance.

209.     Ms. Moll's chapter 7 trustee will administer the inheritance for the benefit of creditors who filed claims in the underlying chapter 7 bankruptcy case.

210.     Ms. Moll quickly and efficiently informed the chapter 7 trustee of the inheritance and fully complied with her obligations pursuant to the Bankruptcy Code.

211.    Mr. and Ms. Moll had certain non-exempt property in their bankruptcy estate, which Mr. and Ms. Moll quickly and efficiently worked with the chapter 7 trustee to compensate the estate for its interest.

212.    In order to compensate the bankruptcy estate, Mr. and Ms. Moll had to obtain a gift from Ms. Moll's parents, as Mr. and Ms. Moll had no ability to come up with funds to compensate the estate.

213.    With the exception of Mr. Moll's 2006 Ford F-250, which is his only operational vehicle, the non-exempt assets are generally of the type that would not produce any significant money if sold individually in their present condition.

214.    Mr. and Ms. Moll have also taken all reasonable steps to reduce their monthly living expenses, but there remains no money to pay even modest payments toward their respective obligations to the Defendants.

215.    Mr. and Ms. Moll have acted in good faith regarding repayment of their obligations to Defendants.

216.    Even if Ms. Moll was healthy, Ms. Moll has no capacity to earn enough money to make a payment that would even ensure the balances on the student loans do not increase, because Ms. Moll does not have her M.D. degree.

217.    Ms. Moll's health makes it impossible for her to work at all.  As such, she has no ability to pay, yet she and Mr. Moll have made significant efforts to pay; yet the balance of the loans continue to increase.

**Conclusion**

218.       In light of the facts and circumstances, excepting Mr. Moll's and Ms. Moll's

obligations to Defendants from discharge would cause an undue hardship upon Mr. Moll

and Ms. Moll, as well as all individuals living in their household, whether dependent upon

Plaintiffs or not.

219.       As such, it is just and appropriate to enter a Judgment determining that the

Discharge Order entered by this Court on September 15, 2022, shall discharge the

obligations owed by Mr. Moll and Ms. Moll to all their respective lenders who are

Defendants in this action.

WHEREFORE Plaintiffs respectfully request this honorable Court enter a judgment declaring that

Plaintiffs obligations to Defendants have been discharged by this Court's Discharge Order, which

was entered on September 15, 2022 (Case No. 22-01086-jwb, Dkt. No. 20) and granting all such

additional relief as is just and equitable.


                                             Respectfully submitted,

                                             OPPENHUIZEN LAW FIRM, PLC
                                             Attorneys for Debtor


Dated: 07/05/2023                            /s/James Oppenhuizen
                                             James R. Oppenhuizen (P68715)
                                             PO Box 7615
                                             Grand Rapids, MI 49510
                                             Phone: (616) 730-1861
                                             joppenhuizen@oppenhuizenlaw.com